IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 9, 2004 Session

## DEBORAH LYNN (KATZ) SMITH v. STEVEN WHITE SMITH

**Appeal from the Circuit Court for Sumner County**
**No. 23862-C     C. L. Rogers, Judge**

---

**No. M2003-02242-COA-R3-CV Filed September 20, 2004**

---

Wife appeals the trial court's distribution of marital property as inequitable in view of her contribution to the acquisition of the only significant asset, the marital home. The trial court clearly recognized that without Wife's contribution from her separate property, the parties would have been unable to buy the house. We modify the trial court's award of the equity in the house and affirm as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Michael W. Edwards, Russell E. Edwards, Hendersonville, Tennessee, for the appellant, Deborah Lynn (Katz) Smith.

Roger A. Sindle, Hendersonville, Tennessee, for the appellee, Steven White Smith.

### OPINION

The sole issue in this appeal is the trial court's distribution of the parties' property upon their divorce. More specifically, the wife appeals the trial court's decision regarding only one asset, the marital home, which was the primary asset.[1]

---

[1]Of course, courts are required to equitably divide the entire marital estate, and the distribution of the rest of the marital property generally affects the equity of the distribution of any one asset. Nonetheless, the parties have assured this court that the other assets are minimal compared to the house at issue. At trial, both agreed that the only significant asset of either party was his or her interest in the marital home. Additionally, neither party has asserted that distribution of other marital property was inequitable. Therefore, we will review the trial court's division of the equity in and debts on the marital home as though it were the entire marital estate.

The parties, Deborah Smith (Wife) and Steven Smith (Husband) were married March 28, 1999. This marriage took place two months after Wife's divorce from her prior husband. As part of that earlier divorce, Wife was awarded $68,758 as equity in that couple's marital home and a $100,000 cash award to be paid in forty-eight (48) monthly installments of $2,536.26.

In June of 1999, Husband and Wife agreed to purchase the house at issue from Husband's parents using Wife's money from the property distribution in her prior divorce. They bought the house for $200,000, giving the sellers $68,508 as a down payment and agreeing to pay $2,500 per month to pay off the remainder interest-free. Both the down payment and the monthly payments were to come from Wife's separate assets. The house was deeded to both parties jointly.

The monthly payments were made for forty-seven months, totaling $117,500[2] as of the date of the hearing. During the marriage, the parties borrowed money from Bank of America which was secured by a second mortgage on the house. The balance owing on the second mortgage as of the hearing was $42,757.77. Wife agreed that $30,000 of the loan was her debt solely since it was used to help Wife's mother pay off bankruptcy debt. The parties also had a third mortgage on the house that secured a line of credit that had a balance of $50,284.61.

The divorce was initiated by a complaint filed on February 19, 2003. The hearing was held July 9, 2003, and the final order was entered July 18, 2003 and was amended, after motion, on August 1, 2003.

The trial court valued the house at $239,000, which was within the range testified to by the parties. The court deducted the outstanding mortgages. Out of the remaining equity, the court awarded Wife $68,000 as reimbursement for the down payment she made and then divided the rest equally. The court awarded the house to Wife, subject to the mortgages, and ordered her to pay Husband his half of the equity. On appeal, Wife argues she should also have been awarded out of the equity the $117,500 of her money that was paid in monthly payments on the house.

The trial court held that Wife's separate property used for the down payment had transmuted into marital property because, after seeking legal advice, she still agreed to title the property to both parties. The court also stated the parties agreed that transmutation had occurred. However, the trial court held that the monthly payments were all made from Wife's separate property and did not transmute into marital property because Wife had no intent to gift Husband with those payments. "She simply was paying on the house that he had an interest in." Of course, if that money remained Wife's separate property, it was not subject to distribution as part of the marital property. Tenn. Code Ann. § 36-4-121(a)(1).

---

[2]The trial court calculated the total payments made at approximately $90,000; Wife uses the $117,500 figure and specifically requests that she be awarded that amount as reimbursement. Because neither the trial court's resolution nor ours depends on the amount actually paid, there is no need to reconcile this apparent discrepancy.

On appeal, as well as in closing argument at trial, Wife does not assert that either the down payment or the monthly payments remained her separate property. Instead, she admits that both should be classified as marital property in accordance with *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988). However, she argues that the trial court's division of the equity in the house was inequitable because she made all the payments out of her separate property.

Once the court identifies the marital property, it is to divide or distribute it in "proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). That distribution "is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson*, 769 S.W.2d at 859. Equity does not require an equal distribution. *Word v. Word*, 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996). Among the factors to be considered are those listed in Tenn. Code Ann. § 36-4-121(c), including the duration of the marriage, the estate of each party at the time of the marriage, the contributions of each spouse to the acquisition, preservation, appreciation, or dissipation of marital property, and "such other factors as are necessary to consider the equities between the parties."

Based on these factors, our courts have established the principle that in marriages of short duration, "it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." *Batson*, 769 S.W.2d at 859. In such marriages, each spouse's contribution to the accumulation of assets is an important factor.

The trial court herein made a number of factual findings relevant to the issue before us, including that it was a marriage of three to four years; that Wife made the down payment on the house from her separate funds; and that the parties had no other sources of funds or means. Further,

> Based on what I understand their incomes were and holdings at the time, it would have been absolutely impossible to have that down payment from any other source. The wife from her own separate funds has paid each and every mortgage payment, approximately $90,000, since June of 1999.

> Based on what the Court was shown as far as income of the parties, there's absolutely no way in the world these parties could have paid $2,500 a month without the wife's separate funds being used to pay it.

> At the time of the marriage I'm shown the husband had some cash and vehicles, certainly nowhere near the amount of assets the wife had based on her recent divorce and awards that she received in that divorce. The husband was made able to allow to even quit a job that he hated and look for other employment because the wife had the ability to get him in the house and make the house payment and he looked around for something else he enjoyed because of her concessions.

From the testimony it's clear to me that the husband had some funds coming into the marriage and some vehicles I'm not familiar with. . . . But they were sold for substantial monies, but rather than using this to pay on the balance due on the house, the money appeared to be used mostly for vehicles for the husband's use. No real contribution other than a $7,500 fence and some split equity.

. . . it is a special circumstance that the wife, totally the wife, made available this house for these individuals to live in during their brief marriage. It wouldn't have happened without it.

The evidence does not preponderate against the trial court's findings of fact. Applying those facts to the factors that must be considered in making an equitable division of property, we conclude that Wife's share of the equity remaining in the house should be increased to more closely reflect her contribution to the house, the only significant marital asset.[3] Both Husband and Wife contributed to other marital expenses, but, as the trial court found, Wife used her separate funds, acquired before the marriage, to provide the couple a home they could not otherwise have afforded.

Using the trial court's methodology, we calculate the net marital property subject to division, *i.e.*, the equity in the house, as follows:

| | | |
|---|---|---|
| $239,000.00 | - | Value of house |
| $ 79,534.00[4] | - | outstanding indebtedness (excluding $30,000 debt assumed totally by Wife) |
| _____ | | |
| $159,466.00 | | Net equity |

---

[3]As the trial court's findings make clear, that court clearly considered Wife's contribution of her separate property to the acquisition of the house the only basis on which the couple could have bought it and kept it. The court found this factor important in considering the equitable division of the equity in the house. Nonetheless, although the court awarded Wife reimbursement of the amount of her down payment from the equity in the house, and although the court determined the total monthly payments had remained Wife's separate property, it did not award her that amount from the equity, and, apparently, there were no other assets of sufficient value from which such funds could have been awarded.

[4]The figure used by the trial court, $75,543, is not an accurate total of the individual amounts of indebtedness found by the court to exist: $16,492 to Husband's parents; $42,757.77 on second mortgage; $50,284.61 on third mortgage; minus $30,000 of debt assigned solely to Wife. The correct total is $79,534.38. Wife did not point out this anomaly, but used figures in her tabulation that total $77,034.38. She used as the balance due the sellers $13,992, rather than the $16,492 used by the trial court, a $2500 difference perhaps explained by one payment, but refers to an exhibit that appears to put the amount due at $16,492. Neither party has challenged the total indebtedness figure used by the court, but the error is apparent from the first order. Assuming it was due to a simple error in mathematics, we will use the trial court's findings as to the individual balances, but use the correct total of those balances.

We do not agree with Wife that she should have been awarded an amount to reimburse her for the total payments she made. That total, as calculated by Wife, together with the down payment, would exceed the equity in the house. The courts can only distribute assets that exist. Besides, the task before the court is to make an equitable division of the marital property, not to repay either spouse exactly for amounts they may have contributed.

While we have concluded that Wife's provision of the money that allowed the parties to buy and keep the house entitles her to a greater proportion of the remaining equity, we also conclude that Husband made some contribution to the house and to its value.[5] Under all the circumstances in this case, we conclude that Wife is entitled to 85% of the net equity, or $135,546, and Husband is entitled to 15% of the net equity, or $23,920.

The trial court's order is modified to reflect this distribution and is affirmed as modified. Costs on appeal are to be divided equally between the parties.[6]

 

 

_____
PATRICIA J. COTTRELL, JUDGE

---

[5] We also note the loan from Husband's parents was interest free.

[6] Husband asked for an award of attorney's fees for this appeal on the basis it was frivolous. Having granted Wife relief, we cannot find her appeal was frivolous, and deny Husband's request.